Pinkney v. Secretary. Mr. Pusateri, we're ready when you are. Good morning. May it please the Court. Michael Pusateri on behalf of the petitioner, Emerson Pinkney, of the law firm Greenberg-Trarig and pursuant to the Criminal Justice Act. Mr. Pinkney was entitled to a fair adversarial testing of the state's evidence against him, but counsel's failure to raise an incorrect jury instruction that constituted fundamental error at the time of his trial and appeal denied Pinkney that constitutional right. The Federal District Court's failure to grant Mr. Pinkney habeas relief in light of controlling case law was error and should be reversed. You know, it strikes me that the jury instruction was error. And so the real question is, could the Florida Supreme Court have reasonably concluded, nevertheless, that it wasn't fundamental error, and therefore there was no prejudice? Is that right? Judge Pryor, I think you've really sharpened the issue here, and I think the papers and the arguments that will be presented today would address that issue specifically. Let me ask you if it's sharpened or not. The definition of fundamental error is not a Federal issue. That's correct, Chief Judge Pryor. So the deeper focus on whether any state court reasonably could or jurist reasonably could have decided that way really doesn't apply to the determination of a state law issue about what's fundamental error for purposes of the state procedural default rule, does it? I think what Your Honor is getting at is this notion that the fundamental error analysis undertaken by the state courts, does it encapsulate these notions of prejudice that the District Court . . . No, no. What I'm getting to is you have a question of state procedural bar or not. No, Your Honor.  Well, if this was genuinely procedurally barred, i.e. the state court definition of fundamental error doesn't cover it, fundamental error is an exception, wouldn't you say, to the state procedural bar? Indeed it is. Okay. So whether or not this is fundamental error for purposes of the state procedural bar exception is an issue of state procedural law, not of Federal constitutional law. That's correct as well. And when we get to the procedural bar aspect of it for Federal habeas purposes, the question is whether the state has consistently applied the state procedural bar or has applied it in an arbitrary and capricious fashion. Isn't that the correct framework? Yes, and in fact, I believe yesterday's decision in Davila would articulate that as well. The Supreme Court ruled on a similar issue yesterday. Okay. So we don't really apply ADEPA and the deference on a state procedural bar question, do we? I don't know that we do, Your Honor, but I don't know that it matters because there is no level of deference that should save the state court's decision and the Federal district court's decision. What I'm suggesting to you is it's not a deference question. It's a question of whether the state procedural ruling was so arbitrary and so capricious that the Federal court shouldn't respect it. Now, if it's draconian, but it's consistently draconian, then the fallback issue is, is it a manifest miscarriage of justice, exception to the requirement that you show, cause and prejudice. And that's right, Chief Judge Carnes, and indeed it is, as we've observed and as the state . . . Not really. I'm seeing how far you would go on that. You went too far. The exception is cause and prejudice. Well, indeed. If the state courts applied the rule in a non-arbitrary and capricious fashion, you get in Federal habeas, then you've got to show cause, one cause of which would be ineffective assistance of appellate counsel. And if . . . I'm sorry, but this area of the law is complicated. If appellate counsel could not have succeeded because the state procedural bar didn't include this as fundamental error, then it can't be ineffective assistance of appellate counsel to fail to raise something he would have lost on, correct? Yes, I believe that's correct, though at the time of the appellate . . . At the time that appellate assistance was rendered, controlling case law in the Second District Court of Appeals held that this constituted a fundamental error. What about Kilgore? Wasn't that before? It was, Your Honor. Well, here's the language I think gives you the most trouble from Kilgore. The doctrine of fundamental error, quote, reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. Now, that is an extremely difficult test to meet because what that means is but for the screwed up jury instruction, no reasonable jury could have found him guilty. But you can't make that showing on this case because you had conflicting testimony on the manslaughter deal. You had the medical report where the guy was shot in the top of the head. Reconciling the fact that he was shot in the top of the head, not top part but downward, with the struggle over the gun, a reasonable jury could have rejected the defendant's testimony that there was a struggle over the gun. Tell me how you can meet Kilgore's he could not have been convicted without the screwed up jury instruction. Your Honor, I am going to address that issue. But before I do that, I want to point out another quotation from the Kilgore decision where the court held, quote, it is not the quantum of proof as to self-defense that determines the requirement for giving the charge. Indeed, if any evidence of a substantial character is adduced, the element of self-defense becomes an issue. Yeah, and there should be an instruction. And everybody agrees, or I think everybody agrees, we'll hear from Posey and counsel, this instruction should have been given correctly and it wasn't. But that doesn't make it fundamental error or all jury instruction errors would be fundamental errors. Well, I agree with that, Your Honor. But we also have to take into account the fact that given these particular circumstances, specifically given the fact that Mr. Pinckney's primary defense relied on self-defense, and as understood by state precedent . . . He testified that it was an accident. Well, again . . . I mean, when I read it, when I read his testimony, it's not clear to me that his primary defense was self-defense. Judge Pryor, I disagree with that. And in fact, the accident, the fact that the gun went off at the time he was, quote, struggling for his life speaks to the fact that indeed he was proceeding via self-defense. And there's case law that indicates that, in essence, when you are defending yourself and then something like this happens by accident, in essence, the two theories essentially merge. It is not that the accident was to the exclusion of self-defense. In fact, they are consistent theories. And again, the very first words out of counsel's mouth related to self-defense, the very closing argument related to self-defense, and throughout the entire duration of the trial, Judge Pryor, both the state and the defense went to the issue of self-defense, trying to describe, for instance . . . I thought he insisted he never fired the gun. If he insisted he never fired the gun, how can that be self-defense, an accident? No, Judge Dabena, I don't know that that's in the record. I think what the gentleman said, what Mr. Pinckney said during cross-examination was, I killed him, Your Honor, on accident, is what he said. He never said, I didn't fire the gun? No, Your Honor, I don't believe he did. In fact, there was forensic evidence, and he didn't really attempt to dispute that. How was this issue of ineffective assistance of appellate counsel raised? It was raised in an amended habeas petition to the Florida Court of Appeals, is that right? For the first time? That's correct, in 2006, Your Honor. So, when it was denied summarily by the Florida District Court of Appeals, do we know, do we have a reasonable basis for determining on what basis it was denied, whether it was on a procedural ground or whether it was on the merits? I believe case law . . . the answer, Judge Pryor, is we don't know. I think there is case law suggesting that when a summary affirmance like this takes place, we have to assume they considered fundamental error. And, again, in these circumstances . . . That would be the procedural. So you're saying you think the case law would be that they decided it on a procedural ground? If they decided it on fundamental error . . . So, as I understood your argument, so this is an ineffective assistance of appellate counsel, Strickland argument, right? That's correct, Your Honor. That's the claim? That's the . . . If they decided it on fundamental error, then that goes back to the point that Chief Judge Korins was raising, which is that was a procedural ruling. That's correct. But, again, it was a summary affirmance. There's really nothing we can glean about the court's rationale behind it. But what I can say, what I think we can say is based on case law as it existed, including Kilgore, that was fundamental error. Now, why? To Chief Judge Korins' point, though there was, in fact, evidence suggesting that the . . . Supporting the state's theory. That's not where the inquiry ends. Martinez and subsequent state case laws say that all we have to do, all the petitioner has to show to make a finding of fundamental error is two things. One, that it was a primary theory. And, again, I've addressed the issue, and in my estimation it is, and we've briefed to that effect. And then, indeed, that it was more than extremely weak. And with respect to that second part, which I think probably concerns the court, I'd like to point out that there are several cases, including Krimen's, including Ferney, where they really don't delve into the facts. What these cases stand for is the proposition that adopting Martinez, adopting Strickland, and consistent with last week's decision in Weaver, the court, so long as these two issues are met, that it is a primary theory and it is not extremely weak, that there is, in fact, prejudice. And I believe that's what those cases stand for, and that is not inconsistent with Supreme Court jurisprudence, federal or state. So you mentioned in Martinez one of the factors, one of the two factors that the court considered, the Florida Supreme Court considered, was whether it was primary defense or not. But the second one was the strength of the evidence. That's correct. And, in fact, they found no fundamental error in that case because the evidence supporting the defense was not strong. I see my time's up. I'd like to answer your question if I may, sir. The facts in Martinez were quite remarkable. In fact, the decision in that case noted that his theory of self-defense, quote, strained even the most remote bounds of credibility. So in Martinez, we have the example of a defendant who first claims that he was attacked by a woman yielding a razor, later says, in fact, she had a pair of scissors. He said that the reason that he wasn't harmed during the altercation at first was that he could anticipate what she was doing because he saw her and later changed his mind and said, no, it was pitch black. We couldn't say. Yeah, but that doesn't mean that unless the evidence is that weak, it is fundamental. That's correct, Your Honor, but subsequent case law offers some more perspective on this. I would point the court to Fernie and Crimmins where so long as the defendant made arguments in his own defense that he acted in self-defense and there were not facts as damning as those in Martinez, that satisfies the Martinez standard and, therefore, it satisfies the Strickland standard. Okay. Thank you, counsel. We'll hear now from Ms. Tiffin. Good morning. May it please the court, Don Tiffin representing the respondent in this matter. And for the record, I'm an Alabama native, so I'm delighted to be arguing in front of this particular panel. Be that as it may, my comments will be relatively brief in response because the legal issues are relatively simple in this case. Strickland requires a showing of prejudice. Specifically . . . So your contention is that the Florida District Court of Appeals in denying this claim reached the merits? Absolutely. And that . . . It didn't decide this on a procedural ground. It didn't decide it on fundamental error. It decided it on the Strickland prejudice question? It decided it on both. How do we know that? How do I know that? Well, because the case law in Florida makes it clear what a three-judge panel of the appellate court is supposed to be looking at, what standard they're supposed to be using when they have a petition alleging ineffective assistance of appellate counsel on an error, on an alleged error that was not preserved at trial. And what they're supposed to be looking at is they're supposed to be reviewing counsel's performance through the prism of Strickland, but on state law grounds, which is fundamental error. And fundamental error is a determination on the merits on state law grounds. So we're in a unique position where today we don't have to actually wonder or speculate what would have happened had a three-judge panel of the Second District Court of Appeal had this issue presented to it, because it did have the issue presented to it via the vehicle of a petition alleging ineffective assistance of appellate counsel. We treat these petitions when they allege an unpreserved error at trial. We treat them as we would a direct appeal. We use the same case authority statutes if it's necessary. We use the same trial record because the state's obligation in those proceedings is to persuade the appellate court that whatever the alleged error was, it did not arise to fundamental error. And unless it arises to fundamental error, the appellate court cannot grant relief. It cannot find prejudice under Strickland. Deficiency, yes. Prejudice, no. And, of course, we have to have both to be entitled to relief. So in this case, Mr. Pinckney's obligation is to show a reasonable possibility that the outcome of the proceeding would have been different, but for counsel's failure to raise this issue on direct appeal. He can't do that. It is simply impossible under the facts of this case because he already presented the issue to the appellate court, which had to review it for fundamental error. And we are conceding the point that the instruction as it was given at Mr. Pinckney's trial was not correct. You're saying his showing to succeed on the fundamental error position is the same as his showing to succeed on Strickland prejudice? Absolutely. That's the way you say the Florida Court of Appeals would do it? Yes. But that's not what the fundamental error decisions of the state courts say. They don't say, forget all this fundamental error, just review it under Strickland? Some of them are fairly simple in the written opinion. Some of those cases arose through petitions alleging ineffective assistance of appellate counsel, and some arose through direct appeal. But, again, they're all being viewed for fundamental error, and I understand Your Honor's point that some of them didn't delve into the facts as much. Some simply reversed or sent it back for a new trial on the possibility that there was fundamental error for a full review of the record, et cetera, et cetera. So the different panels and the various appellate courts have treated it slightly different, but they are always reviewing it for fundamental error. When a panel finds— But fundamental error, Kilgore said, verdict to guilty could not have been obtained without the error but for. Correct. That's not Strickland prejudice? It's not Strickland prejudice in and of itself, but, again, we're dealing with— It's not Strickland prejudice with anything else. It's just not Strickland prejudice. Is your point that if this had been raised on direct appeal, the question would have been fundamental error? Absolutely. If it had been raised in habeas, state habeas, as ineffective assistance of trial counsel, it would be viewed for fundamental error, but because it's ineffective assistance of appellate counsel, the way the Florida courts do it in assessing prejudice under Strickland is they look to the fundamental error analysis and conclude that it can't be prejudice if it wasn't fundamental error. Is that your argument? That is my argument, and that is based in all of the case law from the state of Florida. I didn't see that in your brief, but . . . I apologize for that, but it is . . . Sometimes the briefing just kind of understands. It takes an understanding of something that we may not be as familiar with because we don't deal with the Florida law in and of itself. Right, and I apologize for that, but certainly it is well understood in Florida case law that that is the standard that the appellate courts have to use when ineffective assistance of appellate counsel is being alleged on an unpreserved error. Once again, an unpreserved error. Tell me this. Does the burglary conviction mean necessarily that Pinckney had the intent before he entered the dwelling and therefore was an initial aggressor? Not necessarily. Certainly the evidence could establish that at trial, and the state did argue that, so there was evidence to support it. I thought the jury instruction required the jury to find that if he took to be convicted on the burglary conviction that he had that well-formed intent before he entered the dwelling. To commit a felony. Yes. Wouldn't that necessarily then mean that he was the initial aggressor? I understand Your Honor's question, and my answer would be yes. Which would necessarily mean then that there could be a reasonable basis to conclude no prejudice here because there wouldn't have been fundamental error. Correct. Ms. Tiffin, I think I understand your position now. I was overlooking it. This, as I understand it, is what you're saying. If you raise ineffective assistance of appellate counsel, typically in a state collateral proceeding, strickland prejudice or any other kind of prejudice requires that you show that it would have been a meritorious claim or at least there's a reasonable probability of a different result on appeal had he raised that issue. That subsumes and is wholly occupied by the fundamental error question because the fault on the fundamental error is not the appellate counsel. It's the trial counsel. What the state petitioner should do is raise ineffective assistance of trial counsel and ineffective assistance of appellate counsel in the same state collateral proceeding. Those got separated here. As I understand it, the pro se petitioner has raised the trial counsel claim in another proceeding and lost. But that's not part of this proceeding. Therefore, we focus only on the performance or lack of it and the prejudice or lack of it from the appellate counsel not raising the claim. Your Honor has articulated it perfectly. Apparently much better than I was able to do. Your articulation was fine. I was just a step or two behind you. I appreciate the . . . It's a little bit outside the norm for at least our habeas petitions that we deal with in this court and that it's solely focused on what would have happened in the direct appeal, not what would have happened at trial. Well, it's a creature of the pro se nature of the proceedings because counseled collateral proceeding, at least public defender counsel collateral proceedings in federal court, they would have raised both trial and appellate counsel and had you boxed in on the prejudice on that. One thing that I wanted to point out, because Mr. Pinckney's counsel does seem in some ways to want to treat the error in this forcible felony instruction as per se reversible error, and the Florida courts have never held that it is. Certainly they have held that it constitutes fundamental error in several different cases, but the nature of fundamental error is that the individual facts of each specific case have to be considered independent of one another. And so with a fundamental error analysis, the result is not always going to be the same, even if the cases are somewhat similar because every case truly is different from one another. And I also wanted to point out that the panel reviewing Mr. Pinckney's petition alleging ineffective assistance of appellate counsel included Judges Castanueva, Kelly, and Wallace, and of the six second DCA cases cited in the initial brief, having found fundamental error or having reversed for a full review of fundamental error in a new appeal, those three judges sat on four of those six cases. That panel was very well versed on this issue. Judge Castanueva wrote the opinion in York and he was on two of the other panels. So again, well versed in the issue. They understood it well and they understood that not every case commands a finding of fundamental error. And on the particular facts of this case, they implicitly found by denying the petition that it did not arise to fundamental error. The district court didn't really analyze this correctly, did it? No, no, but the result was correct. Yeah, you argue in favor of the result, but I don't think either one of you will be defending the reasoning of the district court today. So we would ask that this court give the double deference entitled to the state court and affirm the district court's decision. If there are no other questions, I'll... Thank you, counsel. Mr. Pezzarotti, three minutes. Thank you. I'd like to raise two issues that came up during my colleague's discussion with you. First, it is necessarily the case that the failure to raise fundamental error, and let's set that concept aside, it is necessarily the case that the appellate counsel's failure to raise a fundamental error warrants habeas relief. Not if it's not fundamental error. Setting that aside. But let's look at the Fernie case. In the Fernie case, it was held to be fundamental error even where the only evidence supporting the theory of... That's kind of self-evident because fundamental error by definition gets you a new trial and that's the measure of appellate counsel. So let me move on to another line of discussion that I think is germane to this same issue. That's the burglary count. We have to recall that the jury's verdict concerning Mr. Pinkney's burglary conviction was a general verdict. We don't know upon which... It may well be that they based it upon the manslaughter conviction. No, Judge Pryor, and here's why. In Florida, manslaughter is not an intense crime and it can't be premeditated. The White v. State case says so. What does that mean? What it means is that the jury's entire understanding of the concept of manslaughter and its intent element and the justifiable use of force that governed that claim was tainted. And what that means is we have the very real possibility now that the jury convicted Mr. Pinkney of burglary based on an incorrect understanding of manslaughter from both the self-defense and intent perspective. I don't understand that. How it tainted their understanding of the burglary. Well, again, it is conceivable that the jury... The jury was instructed, was it not, that he had to have that intent before he entered the dwelling. Indeed. And they necessarily... We assume they followed the instruction. They necessarily found that he did have that, right? He did have that intent. He had the intent to do what, Judge Pryor? To commit a felony before he entered the dwelling. That's correct, but it is... And if he had that intent, that would have made him the initial aggressor, in which case he would not have had a self-defense defense. Well, again, that may be right, but it may also be the case that the jury relied upon a manslaughter to convict of the burglary. And when a jury is instructed... He had that intent before he ever went in. That's what they necessarily found. He had the intent to do something nefarious. Felony. That's what they convicted him of, yes. I see my time's up, but may I quickly conclude? Because the manslaughter instruction was incorrect, because the burglary instruction could have involved a conviction based upon manslaughter, and where the manslaughter conviction should not have stood, both because the instruction underlying it was incorrect and because manslaughter is not an intent crime, at least one of the theories upon which the jury convicted Mr. Pinckney of manslaughter and burglary, rather of burglary, was legally unsupportable. And under Valentine, the conviction should be reversed. Let me ask you one final question. One way to get to this case, if we decide the premise is accurate, is to say, putting aside all of this and reviewing the ineffective assistance that counsel claimed de novo. The question is whether the defendant has shown a reasonable probability of a different result of the appeal had appellate counsel raised the fundamental error argument in this issue. Of the appeal, correct. And if we read the state court decisions and say, we just can't tell. On this trial record, how they would have applied the fundamental error analysis. We have cases that say, when it comes to reasonable probability of a different result, if you can't tell, if it could go either way, the petitioner loses. Because the petitioner has to establish both elements of ineffective assistance of counsel. So if we look at this and say, we don't know what the state appellate courts would have done with this. We've read all the decisions. Kilgore says one thing. Martinez says pretty much the same thing on a different record. So forth and so on. And then we look at the DCAs and we can't tell. Then you would lose. Would you not? On even a de novo review. That may be. But to the extent that the court undertakes that analysis at the end of argument, I would refer the court to six controlling Second Circuit District Court of Appeals cases that the District Court of Appeals necessarily had to rely upon in rendering its decision. Bates, Baker, York, Velazquez, Hernandez, and Zuniga. And in each instance, the facts were no more severe than those in Mr. Pinckney's underlying claim. And for those reasons, Your Honor, habeas relief should be granted and the District Court's decision should be reversed. Thank you. Thank you, Mr. Costeri. Notice you're court appointed. We appreciate you taking that. Well argued on both sides. Very helpful. We'll take that case.